IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LYNN G. DORSEY,

                Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

OPINION AND ORDER

17-cv-075-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff Lynn G. Dorsey seeks judicial review of a final decision of the Commissioner of Social Security, which denied her application for Social Security Disability Insurance Benefits. For the reasons provided below, the court will affirm the Commissioner's determination and enter judgment in defendant's favor.

BACKGROUND

On April 15, 2013, Dorsey filed a Title II application for a period of disability beginning June 21, 2011. Her claim was denied on November 20, 2013, and upon reconsideration on April 30, 2014. A video hearing was held before Administrative Law Judge John H. Pleuss on August 11, 2015, following which the ALJ found Dorsey suffered from a variety of severe impairments, including a back condition, chronic pulmonary obstructive disease, and cirrhosis. (AR at 14.) At the same time, the ALJ found other health impairments were not severe, including affective disorder, lung problems, arthritis, complaints of pain in the back and legs, and vision problems. (*Id*. at 16-17.) In his September 23, 2015, the ALJ went on to find that Dorsey was capable of past relevant work as defined in 20 CFR § 404.1565 with a variety of additional limitations on physical

activities and exposure to environmental irritants. (AR at 15.)

OPINION

This court must defer to an ALJ's decision to deny benefits unless it is unsupported by substantial evidence or based on an error of law. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

As a result, a reviewing court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Still, the court must conduct a "critical review of the evidence," and the ALJ's written decision must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

Here, plaintiff argues on appeal that the ALJ failed to properly evaluate the evidence and explain his reasoning with respect to: (1) her residual functional capacity; (2) her subjective testimony; and (3) the medical source opinions. The court will address each criticism in turn below.

I. Residual Functional Capacity Determination

As an initial matter, plaintiff argues that the ALJ erred in finding that her "end-stage" cirrhosis had improved to some extent, because it is incapable of improvement.[1] However characterized, the ALJ expressly examined the impact of the condition on plaintiff's RFC and acknowledged that this condition has caused her pain. (AR 16.) In the absence of evidence that suggests her cirrhosis is sufficiently disabling to change the ALJ's RFC determination with respect to the potential jobs identified by the vocational expert, this is an insufficient basis to remand for further fact finding. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of [claimant's] but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time."); *Estok v. Apfel*, 152 F.3d 636, 639–40 (7th Cir. 1998) (noting that, whatever the diagnosis, the claimant must provide sufficient evidence of actual disability).

Plaintiff also argues the ALJ erred in evaluating her assertion of disabling COPD by pointing to her exercise activities without mentioning related back pain. However, the ALJ noted a variety of other activities performed by plaintiff that cast doubt on her claim of disabling COPD, including "vigorous" house cleaning, patterns of inhaler use, daily walking with a lack of shortness of breath, and the ability to climb stairs. (AR 17.) Similarly, the fact that plaintiff's forced expiratory volume was found to be near listing level does not by

---

[1] "Cirrhosis is a late stage of scarring (fibrosis) of the liver caused by many forms of liver diseases and conditions, such as hepatitis and chronic alcoholism." "Cirrhosis," MayoClinic, https://www.mayoclinic.org/diseases-conditions/cirrhosis/symptoms-causes/syc-20351487 (last visited September 26, 2019).

itself require remand.

Moreover, the ALJ expressed skepticism with respect to both her cirrhosis and COPD claims, noting that plaintiff mention neither condition when asked why she could not work, instead pointing to her claims of back and leg pain. (AR 17.) Ultimately, the ALJ found that plaintiff's statements about the severity of her symptoms were not fully credible. (AR 18.)

Plaintiff next argues the ALJ conflated vision issues with optic neuropathy and, therefore, misunderstood plaintiff's claim that eyesight problems would render work tasks difficult, but ignores that the ALJ acknowledged her claims of vision problems. (AR 17.) Specifically, the ALJ made a credibility determination, finding that the symptoms may not have been as severe as she claimed, since plaintiff only questioned the effectiveness of her eyeglasses prescription at the same time she asked for "a letter for disability" from her ophthalmologist. (AR 17.) Because plaintiff never returned for adjustments after that point, the ALJ did not err by inferring that either the eyeglasses were effective from then on *or* the vision problems were not significantly limiting. Either way, plaintiff's attempt to distinguish between those conditions does not bear on the RFC determination.

Finally, with respect to her back issues, plaintiff argues the ALJ erred by noting her "minimal complaints" when there was other, subjective testimony about her experiencing more significant pain, including pain related to use of a Gazelle exerciser during part of the period. (AR 783.) Since the latter pain appears to have been exercise induced, plaintiff fails to explain why it would undermine the ALJ's conclusions that her complaints of back pain would be more frequent and debilitating if truly severe. Putting aside the ALJ's finding

that there was not a significant number of complaints of back pain during the period, the ALJ also relied on the lack of any diagnostic support for these complaints of pain. (AR at 17.) Specifically, examinations conducted in 2012 and 2013 showed positive results and a lack of significant distress. (AR 17.) While plaintiff disputes *some* of the examples cited by the ALJ to conclude that she remained "very active," these disputes do not undermine the legitimacy of his reasoning. (AR 17.)[2] *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), as amended (Dec. 13, 2000) ("While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision.").

## II. Evaluation of Subjective Testimony

Plaintiff next argues that the ALJ did not properly credit her complaints of falling, suggesting that the ALJ's mention of plaintiff's history of cocaine use based on a drug screen at the same time was inappropriate. First, plaintiff argues this is an attack on plaintiff's character in violation of SSR 16-3p, but this is not a fair reading of the ALJ's opinion, which merely makes mention of her drug use in summarizing plaintiff's larger medical history. (AR at 18.) Second, plaintiff argues that cocaine use has no bearing on plaintiff's physical symptoms. On this point the court agrees, but then apparently so does the ALJ, since nothing in his opinion implies in any way that cocaine use was responsible for plaintiff's alleged falling incidents. To the contrary, the ALJ appears to have dismissed this possible concern because plaintiff chose not to use a cane going forward despite the

---

[2] As an aside, plaintiff also asserts that her liver disease prevented taking nonsteroidal anti-inflammatory drugs, although the relevance of this assertion remains unclear, especially in light of the ALJ's finding plaintiff's pain was not disabling. Regardless, there is no evidence that her inability to take such drugs impacts plaintiff's RFC.

recommendation of her doctor. (AR 18.) *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[I]nfrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." (citing SSR 96–7p)). While plaintiff claims she did not use a cane because she would trip over it, and preferred to rely on other individuals for support, this testimony was also before the ALJ, and there is no reason to believe it was not part of his evaluation of the evidence.[3]

For the reasons discussed in the RFC determination, plaintiff's remaining arguments about the ALJ improperly discounting her statements about the severity of her symptoms are not availing. Briefly, the ALJ looked to her activities and made a valid credibility determination regarding the symptoms. (AR at 18.) The fact that the ALJ pointed to these activities in making a credibility determination about the severity of plaintiff's symptoms does not, as plaintiff argues, mean he wrongfully extrapolated an ability to function in a 40-hour work week from the ability to engage in such activities.

## III. Medical Source Opinions

Finally, plaintiff argues that the ALJ erred in assigning little weight to two letters from Dr. Mayeux, who opined that plaintiff was limited in her activities and would have difficulty returning to work due to her liver and lung disease. While plaintiff argues the ALJ was wrong to characterize the letters as being vague and lacking specificity, the ALJ did not assign great weight to the opinion because plaintiff's symptoms were stable during

---

[3] Whether Dr. Mayeux was aware of any test results, which she appears to have been, is also not apparently relevant in assessing the ALJ's reasoning.

the period for which disability is claimed. (AR 18.) Additionally, the specific limitations supported by the record were accounted for in the ALJ's RFC determination that restricted plaintiff's potential work activities to light work with additional exertional restrictions.

Plaintiff then argues that the ALJ erred in dismissing the opinion of her ophthalmologist, Dr. Anderson, that plaintiff should receive disability due to moderate visual deficits that will likely remain stable going forward. Plaintiff's primary concern seems to be that the ALJ did not explicitly mention the doctor's concern with his undertaking "fine tasks" that could be required in a work setting, but the ALJ reasonably found this testimony to be vague and not worthy of significant weight due to the lack of changes to plaintiff's eyeglasses prescription, as well as her demonstrated ability to perform a range of tasks requiring general eyesight. (AR 18-19.)

Plaintiff also argues that the ALJ erred by failing to mention the opinion of Dr. Lamberson in October 2013, that plaintiff's physical capacities were very limited. (AR at 416.) However, this opinion was issued well after the expiration of plaintiff's last date insured, meaning it has no obvious bearing on the period in question, where the ALJ found, based on other record evidence, that the plaintiff was "active" and capable of performing a range of activities. (AR 17-18.) *See Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) "As for the evidence post-dating Eichstadt's date last insured, the ALJ reasonably concluded that this, too, failed to support Eichstadt's claim."). Moreover, to the extent that the opinion relies on subjective testimony, it is properly subject to the ALJ's credibility determinations.

Last, plaintiff argues that the ALJ erred by affording without any explanation

"greater weight" to the opinions of Dr. Bush, the state agency physician. But this statement was made in the context of the ALJ's discussion about why less weight was assigned to the opinions of Drs. Mayeux and Anderson, meaning the ALJ *did* provide an explanation. (AR 18.)

ORDER

IT IS ORDERED that the decision of defendant the Commissioner of Social Security, denying Lynn G. Dorsey's application for disability insurance benefits is AFFIRMED. The clerk of the court is directed to enter judgment for defendant and close this case.

Entered this 27th day of September, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge